RODYE H. BUTLER, *et al.*

*v.*

SMITH'S TRANSFER CORP., *etc.*

(No. 12148)

Submitted September 11, 1962.   Decided November 13, 1962.

*Frederick O. Byrer, Kuykendall & Whiting, J. Sloan Kuykendall,* for appellant.

*Martin and Seibert, Clarence E. Martin, Jr., James M. Mason, III,* for appellees.

BERRY, JUDGE:

This case involves an action of trespass on the case under the old procedure, before the new rules became effective,

instituted by Rodye H. Butler and Meda J. Butler, plaintiffs, against Smith's Transfer Corporation of Staunton, Virginia, a Corporation, and Peachey W. Riley, in the Circuit Court of Jefferson County. A settlement was made with the defendant Peachey W. Riley, and on motion of the plaintiffs he was dismissed as a party to this action.

The jury returned a verdict in favor of the plaintiffs in the amount of $13,825.00 on May 12, 1961, for damages done to their house and personal property when struck by a truck owned by the defendant, Smith's Transfer Corporation, about 2:20 a. m. on August 4, 1959. The trial court entered judgment for the plaintiffs on June 5, 1961, in the amount of $11,038.68, which amount was the jury verdict less the amount paid to the plaintiffs by Peachey W. Riley, all of which was done in accordance with a stipulation contained in a pre-trial order dated May 10, 1961. The defendant's motions to set aside the verdict, grant a new trial and enter judgment for the defendant were overruled by an order of the trial court dated June 10, 1961. Upon petition to this Court by the Smith's Transfer Corporation an appeal and supersedeas to said judgment was granted on December 11, 1961. The case was submitted to this Court on arguments and briefs at the September, 1962, Term.

This action arose out of an accident between the defendant's truck which was driven by Kenneth James Fletcher, an employee of said Company, and a 1948 Chevrolet automobile owned and operated by Peachey W. Riley, on U. S. Route 340, at Ripon, West Virginia, between Berryville, Virginia and Charles Town, West Virginia. The defendant's truck was traveling in a northerly direction from Berryville toward Charles Town, and the Chevrolet automobile was traveling in a southerly direction from Charles Town toward Berryville at the time of the accident. The road or highway was a blacktop 36 feet five inches in width and divided into two equal lanes at the place of the accident. It had been raining and the road was slick. The defendant's truck was being driven in about the center of its proper lane when the Riley car rounded a curve in the road and was driven or skidded into the defendant's truck. The Riley au-

tomobile was knocked back 73 feet nine inches where it came to rest diagonally across the middle of the highway facing the opposite direction from which it was proceeding before the accident occurred. The defendant's truck ran some 25 feet on the highway, where it left said highway by running over a curb about six inches in height, dropped about two feet into the plaintiffs' yard, and then ran about sixty-seven feet where it struck the plaintiffs' house, which was constructed of cinder blocks and frame, ran into the front room and down into the basement before it stopped, practically demolishing the house as a result thereof. The plaintiffs and the other occupants of the house, who were sleeping at the time, were trapped and could not get out without help. The furniture and household effects could not be removed from the house after the accident, and when the truck was later removed the house fell in, making it a total loss. The uncontradicted testimony with regard to the salvage after the truck was removed is to the effect that nothing of value could be obtained and it would cost about $350.00 to remove the debris.

The only witness to testify with regard to this accident was the driver of defendant's truck, Kenneth James Fletcher. Riley, the driver of the automobile, apparently was not present during the trial and did not testify. The driver of the truck testified that before the accident the truck was traveling up a slight grade and that he was driving the truck in low-fifth gear, which would not allow the truck to exceed 40 miles per hour. There was a sign just before entering the town of Ripon where the accident occurred indicating a reduction of speed, and advising that the speed limit was 40 miles per hour. The truck had a tachometer on it, which was removed by an employee of the defendant soon after the accident occurred, although it is contended by the plaintiffs that the tachometer was not checked to ascertain if it was in good condition, as was the truck when it left Winchester at the beginning of the trip. The tachometer indicated that the maximum speed at which the truck had been driven at any time before the accident was 45 miles per hour, and immediately before the accident it was traveling at about 38 miles per hour, which speed

was reduced to 28 miles per hour, at which time a sudden disturbance occurred, as indicated by an unusual registering on the tachometer. The truck driver stated that the Riley car was being driven at a faster rate of speed than the truck he was driving at the time of the accident. The truck was 44 feet in length and was carrying a load of 23,000 pounds.

A state policeman testified on behalf of the plaintiffs that he had looked at the tachometer but was not too familiar with such instrument. He testified, however, that the tachometer indicated the truck was being driven at 39.2 miles an hour. The state policeman further testified that there were no skid marks on the road but that cut marks were made on the highway by a vehicle and that such marks appeared on defendant's side of the road.

The driver of the defendant's truck stated that when the Riley car suddenly came across the highway into his lane of traffic he applied the brakes; that the bumper was pushed down on the left front wheel of the truck; and he cut or turned the truck to the right in an attempt to avoid the accident.

During the trial the defendant objected to the testimony of plaintiffs with regard to damages to both the house and personal property on the grounds that they were not properly proved. Plaintiffs introduced evidence by witnesses who stated that they knew the value of property in the area where the plaintiffs' house was located, and that the market value of said house at the time it was destroyed was $11,500.00. The plaintiff, Rodye H. Butler, testified with regard to the market value of the household property and personal effects at the time they were destroyed by using an itemized list, which was objected to on several different occasions by the defendant. Such testimony could have been perhaps more detailed and accurate. However, the defendant agreed by stipulation to allow the itemized list, from which the plaintiff was testifying relative to the damages of such personal property, to be introduced as evidence, with the market value of each item as stated on said

list to be considered by the jury regarding this claim for damages.

The defendant contended during the trial that it had the right to introduce into evidence the amount of the settlement made by Peachey W. Riley to the plaintiffs. The court would not permit this to be done, over the objection of defendant, but did give him the opportunity to vouch the record with this matter, which was not done.

At a pre-trial hearing the defendant had requested that the plaintiffs be required to state the amount of money paid by Riley and that the record disclose such amount, contending that it had the right to show the amount of the settlement in order that it could be deducted from any verdict which the jury might return. However, in a pre-trial order entered after the pre-trial hearing, a stipulation between the parties was contained in said order to the effect that if there was a recovery by the plaintiffs against the defendant, the plaintiffs would disclose the amount of the settlement and deduct such amount from the jury's verdict. The record indicates that the plaintiffs, by stipulation, did disclose the amount paid by Riley to them. The trial court deducted from the verdict rendered by the jury the amount paid by Riley for damages to the property and entered judgment for the balance.

In addition to the common-law declaration filed under the old rules, a bill of particulars was furnished by the plaintiffs which alleged that the plaintiffs' damages were the result of negligence on the part of the Smith Transfer Corporation, in that its tractor-trailer was operated at a speed in excess of the legal limit and of that speed which was reasonable and prudent under the circumstances existing at the time and place of the accident.

Eleven assignments of error are made by the defendant for a reversal of the judgment in this case. Many of these assignments are duplicated and can be reduced into three categories: (1) The trial court erred in refusing to permit the defendant to prove during the trial the amount of money that had been received by the plaintiffs of the joint tort-

feasor, Peachey W. Riley; (2) the trial court erred in holding that the evidence of damages to both the household and personal property of plaintiffs was sufficient to support the verdict, and (3) the trial court erred in holding that the evidence was sufficient to submit to the jury the questions as to whether or not the defendant was guilty of negligence and, if so, whether such negligence was the proximate cause of the damages suffered by the plaintiffs. Several errors were assigned in connection with the instructions given and refused by the court, but these alleged errors are connected with and relate to the three assignments listed above and will be discussed briefly in connection therewith.

The first two categories stated above were practically abandoned by the defendant during the argument before this Court, which argument indicated that negligence and proximate cause were the controlling questions in this case. The defendant asserted during the trial, and contends in its brief filed in this Court, that it should have had the right to select a method of proving the settlement made with the other tort-feasor, Peachey W. Riley.

It is true that such presentation is optional with the defendant. *New River & Pocahontas Consolidated Coal Co. v. Eary,* 115 W. Va. 46, 49, 174 S. E. 573. However, the defendant waived this option in connection with this question by stipulation contained in a pre-trial order agreeing that the amount of such settlement could be deducted from any verdict the jury might return. Stipulations or agreements made in open court by the parties in the trial of a case and acted upon are binding, and a judgment founded thereon will not be reversed. 17 M. J., Stipulations, § 1; *McCoy v. McCoy,* 74 W. Va. 64, 81 S. E. 562. The same rule would of course apply to pre-trial stipulations.

This method is a proper one for use in cases where one joint tort-feasor has made a settlement, in order to give credit for the amount of such settlement in satisfaction of the wrong. It was held in the case of *Hardin v. New York Central,* 145 W. Va. 676, 116 S. E. 2d 697 that: "A stipulation may be entered into between the parties, where a settlement has been made by one joint tort-feasor and another

is being sued for the same cause of action, agreeing that the amount of any verdict will be reduced by the amount of such settlement if the jury returns a verdict for the plaintiff and the court shall then deduct from the verdict the amount of settlement and enter judgment thereon for the difference." The only purpose of using the settlement of one joint tort-feasor in a trial where another joint tort-feasor is sued in the same cause of action is for the purpose of mitigation of damages, and it is immaterial whether it is submitted to the jury for the purpose of deduction from its verdict by the jury or left to the court by stipulation of the parties to deduct from the returned verdict of the jury before judgment is entered. The only other method is to do nothing before or during the trial and if a judgment is rendered against the other joint tort-feasor obtain advantage of the settlement by deducting such amount when an execution is issued to satisfy the judgment. *Hardin* v *New York Central, supra*. The same result is reached in each method. The defendant has obtained the advantage of such settlement in the method used in this case and cannot complain of any error in connection therewith.

The assignment of error with regard to damages is not well taken. It is true that better evidence could have been introduced with regard to the personal property by having an experienced appraiser testify but the defendant agreed by stipulation that the jury could consider as if testified to separately the itemized list of personal property, which the plaintiffs claim was destroyed, with the market value at the time of the damage as listed by plaintiffs for each item. It has been held that the proper method of proving a loss in such cases is to ascertain the market value at the time of destruction. *Mullins* v. *Baker*, 144 W. Va. 92, 107 S. E. 2d 57. Then too, the plaintiffs' proof of damage to personal property was $5,397.47. The defendant's proof with regard to this damage was between $2100.00 and $2500.00, and the jury must have allowed only $2325.00. This figure is determined by deducting the amount of the market value of plaintiffs' house before it was destroyed, which was $11,500.00, from the amount of the verdict of $13,825.00. It would therefore appear from all of the evidence introduced in this

case that the defendant has not been prejudiced regarding the amount of damages allowed by the jury.

Concerning the damage to plaintiffs' house, there was competent evidence that it was completely destroyed as a result of this accident, and that the market value of the house at the time of its destruction was $11,500.00. This has been held to be a proper method of ascertaining damages in such cases, as is clearly indicated in the case of *Stenger* v. *Hope Natural Gas Co.*, 141 W. Va. 347, 355, 90 S. E. 2d 261, in the following words: "When property is completely destroyed, the amount of recovery is measured by the market value at the time of destruction."

We now come to the controlling issue involved in the determination and disposition of the case at bar. This question is whether or not the defendant Smith Transfer Corporation, under the facts in this case, was guilty of negligence, and if so, was such negligence a proximate cause of the damage to the plaintiffs' property.

There is no question, from the facts in this case, that the driver of the Chevrolet automobile involved in the accident, Peachey W. Riley, was guilty of negligence under the unrebutted testimony adduced by defendant. He was driving his car at night at a time when it was raining, on a slippery highway, in such a manner that it was driven or skidded across the highway from his lane of traffic into the lane of traffic being used by the Smith Transfer Corporation's truck, and hit the truck in its proper lane. However, the fact that Riley was guilty of negligence would not relieve the defendant, Smith Transfer Corporation, from liability if it too was guilty of negligence which proximately contributed to the damage to plaintiffs' property. Only if the negligence of Riley was the sole cause of the accident which caused damage to the plaintiffs' property, and the defendant, Smith Transfer Corporation, was not guilty of any negligence proximately contributing to the damages, could Smith Transfer Corporation be relieved of liability. If Riley was guilty of negligence, which he unquestionably was under defendant's version, and the Smith Transfer Corporation was guilty of negligence after Riley's act of negligence,

both of which coupled together caused the damage to the plaintiffs' property, both Riley and the Smith Transfer Corporation would be guilty of concurrent negligence, and both would be liable for the damages to plaintiffs' property. *Lewis* v. *Mosorjak*, 143 W. Va. 648, 104 S. E. 2d 294; *Clay* v. *Walkup*, 144 W. Va. 249, 107 S. E. 2d 498.

It is the contention of the plaintiffs that the negligence of the defendant, Smith Transfer Corporation, was due to the speed and manner in which its truck was being operated under the facts and circumstances of this case, before and after the accident, that its truck was either exceeding the legal speed limit, or being driven too fast considering all facts and circumstances then existing, in violation of Code, 17C-6-1, as amended, or in violation of the common law duty pertaining to the exercise of due care under the circumstances in connection therewith. Although the plaintiffs had no oral testimony to support this contention, they say that the physical facts and circumstantial evidence in connection with this accident support their position. The evidence is uncontradicted that after the defendant's truck was hit by Riley's automobile it ran about 25 feet on the highway, over a curb about 6 inches high, and then some 67 feet into plaintiffs' yard before hitting the house with terrific force. It appears from the evidence that the truck was never stopped by the driver, but was stopped by the impact upon hitting the house. The driver of defendant's truck said he applied his brakes when the Riley car hit the truck. It is the contention of the plaintiffs that the truck was going at such speed that it could not be stopped by a full application of the brakes, indicating that it was being driven too fast thus evidencing negligence on the part of the defendant for which it could be held liable for damages to plaintiffs' property.

The defendant answered this argument by saying that there is no evidence contained in the record showing that the defendant's driver fully applied his brakes after the Riley car hit the truck. If the truck driver failed to apply his brakes properly he would then be guilty of negligence for which the defendant is responsible, because he did not act as a reasonable and prudent person under the existing

circumstances. The driver, from his testimony, had control of all his faculties at the time of the accident, because, as he said, he turned the truck to the right and applied his brakes. However, there is no indication that the truck's speed was reduced in any appreciable amount after the Riley car ran into it.

The driver, after the truck hit the plaintiffs' house, got out of his truck and assisted the occupants in getting out of the house. He then went up on the road to render assistance to Riley who was lying in the road, having been placed there by a passing motorist after the accident. "Reasonable inferences drawn from physical facts and circumstances surrounding a happening amount to circumstantial evidence and may be as strong as direct evidence." *Alvey* v. *Butchkavitz*, 196 Va. 447, 84 S. E. 2d 535; *Webb* v. *Harrison*, 127 W. Va. 124, 31 S. E. 2d 686. The physical facts and circumstantial evidence in this case to the effect that the defendant's truck ran some 90 feet after the Riley car hit it and was not stopped until it came in contact with the plaintiffs' house with tremendous force would be sufficient for submission to the jury for its determination as to whether or not the defendant's truck was being driven in excess of the legal speed limit, or in excess of the speed that was reasonable and prudent under the conditions then existing, all of which would be in violation of the statute, Code, 17C-6-1, as amended, and of common law duty, and would constitute *prima facie* negligence on the part of the defendant.

It was held in Point 2 of the syllabus in the case of *Webb* v. *Harrison, supra,* that "Ordinarily the question as to whether a *prima facie* case made by a plaintiff by circumstantial evidence has been overcome by direct testimony of the defendant in conflict therewith is for the jury." Undisputed physical facts take preference over oral testimony, and where verdicts are inconsistent with such facts, such verdicts will be set aside. *Daniels* v. *Cranberry Fuel Co.,* 111 W. Va. 484, 163 S. E. 24; *Marshall* v. *Conrad,* 118 W. Va. 321, 191 S. E. 553; *Collins* v. *Woodmen of World Life Ins. Soc.,* 124 W. Va. 195, 19 S. E. 2d 586; *Reece* v. *Hall,* 142 W. Va. 365, 95 S. E. 2d 648.

The defendant relies on the case of *Fleming* v. *Hartrick,* 100 W. Va. 714, 131 S. E. 558, to support its contention that the defendant was not guilty of any negligence which proximately contributed to the damage to the plaintiffs' property.

It is true that in the *Hartrick* case this Court held that there was absolutely nothing shown from which the jury could infer negligence. In that case the defendant drove his car to the right in order to avoid colliding with an approaching automobile and hit the plaintiff's decedent who was walking on the railroad track. The defendant did not know plaintiff's decedent was on the track; he had not lost control of his car but deliberately took the action he did, exercising the best judgment he had in avoiding a head-on collision. It was specifically found from the facts in that case that the defendant's car was not being driven at an excessive rate of speed at the time of the accident and the distance the vehicle ran after hitting the plaintiff's decedent did not constitute negligence. Under the facts in the case at bar, it was a question for the jury to determine whether or not the defendant's truck was going at too great a rate of speed to be stopped before it struck plaintiffs' house, and whether or not the brakes, if used properly, failed to stop the truck because of the speed it was being driven, or whether or not they were used properly under the circumstances by the driver so as to stop the truck at the time of the accident. True, if the jury found from these facts that the truck was being driven too fast, this would be in conflict with oral testimony of the driver of the defendant's truck, but in such cases, where the evidence is conflicting and reasonable men may draw different conclusions, the question of negligence is for the jury. *Webb* v. *Harrison, supra; Leftwich* v. *Wesco Corp.,* 146 W. Va. 196, 119 S. E. 2d 401; *Clay* v. *Walkup,* 144 W. Va. 249, 107 S. E. 2d 498.

It has been previously stated herein that the undisputed facts with regard to the Riley car skidding across the road on to the opposite side of the highway and hitting the defendant's truck constituted negligence on the part of Riley, and whether the defendant was guilty of negligence by virtue of the speed at which the truck was being driven

under the circumstances in this case was a question of fact for jury determination. *Leftwich* v. *Wesco Corp., supra; Clay* v. *Walkup, supra.* Whether the negligence of Riley and the defendant, Smith Transfer Corporation, was concurrent and taken together proximately caused or contributed to the damage to plaintiffs' property is a question for jury determination, and a verdict of the jury based upon sufficient facts and supported by substantial evidence will not be disturbed. *Sigmon* v. *Mundy,* 125 W. Va. 591, 25 S. E. 2d 636; *Wilson* v. *Edwards,* 138 W. Va. 613, 77 S. E. 2d 164; *Lewis* v. *Mosorjak,* 143 W. Va. 648, 104 S. E. 2d 294; *Clay* v. *Walkup, supra; Metro* v. *Smith,* 146 W. Va. 983, 124 S. E. 2d 460.

The defendant's objections to instructions given on behalf of plaintiffs and those offered by the defendant and refused by the Court are without merit in this case. The defendant's instructions that were refused were covered by other instructions given and therefore did not constitute error, because "Duplication of instructions is neither necessary nor desirable". *Wilson, Admx.* v. *Edwards,* 138 W. Va. 613, 77 S. E. 2d 164.

The defendant assigns as error the giving by the trial court of the plaintiffs' instruction telling the jury that it may consider the view as evidence. It has been repeatedly held that the jury may consider the view the same as any other evidence. *State* v. *McCausland,* 82 W. Va. 525, 96 S. E. 938; *Thorn* v. *Addison Bros. & Smith,* 119 W. Va. 479, 194 S. E. 771; *The C. & O. Ry. Co.* v. *Johnson,* 137 W. Va. 19, 69 S. E. 2d 393; *Yeary* v. *Holbrook,* 171 Va. 266, 198 S. E. 441.

Another assignment of error in connection with instructions offered by the plaintiffs and given by the court to the jury was the use of the phrases "to some degree" and "to any degree". These phrases were used in connection with the jury's finding of negligence on the part of the defendant, as it was told that if defendant, by negligence in some degree, or in any degree, contributed proximately to the damage of the plaintiffs' property, it could find for the plaintiffs. These instructions also informed the jury that it must make

such findings from a preponderance of the evidence. It has been held that if such instructions were refused by a court when offered by a plaintiff, this would constitute reversible error. *Skaff* v. *Dodd,* 130 W. Va. 540, 44 S. E. 2d 621.

We fail to find any reversible error in the instructions given and refused in this case.

For the reasons stated herein, the judgment of the Circuit Court of Jefferson County is affirmed.

*Affirmed.*